termed, without which he would be unable to perform the duty assigned him.

It is contended by the counsel of the Messrs. Green that this power is only to· be executed in the same cases, and in the same way that assessors may do under the act of 1866 [14 Stat. 98]. This is a mistake; · the powers are of a different character altogether; it is only when the summons is not complied with that obedience thereto is to be enforced as provided for in the case of non-compliance with the summons issued by assessors, which is to apply for an attachment to the district judge of the district, or to a commissioner of the circuit court of the United States.

It is contended that before the Messrs. Green were under any obligation to produce their books and papers the supervisor was bound to inform them of his purpose in the inspection. This he was not bound to do; · for such a disclosure might have defeated the very object of the examination. It might have been to reach a defaulting or fraudulent officer, or other person committing frauds on the revenue, who might thereby have been notified of such proceedings against him, and made his escape, or covered up his fraud.

·Without further comment. I am satisfied that the supervisor is entitled under the law to the examination sought, and to this mode of procuring it; which brings us to the last proposition, and that is, the repugnance of these acts of congress to the constitution.

It is said that this is an attempt at an unreasonable seizure and search into the private affairs of the citizens, against which they are protected by the constitution. There is no attempt to investigate any of the private affairs of the Messrs. Green, only an examination into so much of their business as relates to the operations of their banking house and is connected with the subjects of taxation; beyond this, he has no right to institute an inquiry. Although the Messrs. Green are not operating under ·a charter, they are nevertheless doing business with the public as bankers. If doing a business legitimately,—and there is no charge that they are not, nor is it necessary, as we have seen, that there should be, to support this inquiry,—no injury can result to them from an inspection of their books and papers connected with this public business, in which the United States has an interest in the collection of the revenue imposed. I am satisfied that it is not an invasion of any of the rights secured under the constitution.

But it is contended that it is in violation of that portion of the constitution which protects parties against being compelled to testify against themselves. If the provision of the constitution protecting parties against being compelled to produce such papers and documents as may tend to subject them to a criminal prosecution applies in this ·case, they are relieved from such liability by the provisions of the act of congress approved February 25, 1868 (15 Stat. 37), which was intended to enable the government. through its officers, to detect and punish frauds by obtaining evidence from those otherwise protected under this provision of the constitution.

The unconstitutionality of the act conferring the power has been pressed by counsel with unusual ability and zeal, but he has failed to convince my mind of its correctness. It was competent for congress to provide the mode by which compliance with the demand for an inspection of such books or documents, as well as the testimony of witnesses, might be enforced, and it has adopted the measures stated in the act; referring it to the judge of the district, in whom judicial power is vested, to determine the rights of the parties and to enforce obedience to the laws; and has not left it to the supervisor to be the judge of the extent of his powers in such cases. If the Messrs. Green were of the opinion, as they, I am satisfied, were, that this demand upon them was not authorized by law, it was their right to refuse compliance until the question should be determined by the proper tribunal, and in the mode prescribed by law, and their non-production of their books and papers, under the circumstances, is by no means to be taken as a suspicion of their having been guilty of any omission, or any violation of law; for no man, however correct in his business, would be willing to have his affairs pried into by those having no legal authority to do so. And it is not to be presumed that the supervisor would desire to inquire into the private affairs of citizens for any other purpose than those connected with his official duties. To settle the legal rights of both parties without reflection on either, this case has been brought before me; and coming to the conclusion I have, I feel constrained to overrule the motion to quash the proceedings, and unless other proceedings are proposed, the Messrs. Green will be directed to produce such books and papers as the supervisor may desire to examine, connected with their banking operations; it being understood that this right upon the part of the supervisor extends only to such books and papers as relate to their banking operations, and are connected with the internal revenue of the United States.

Order accordingly.

STANWOOD (UNITED STATES v.). See Case No. 16,377.

STAPLES (ARCULARIUS v.). See Case No. 509b.

## Case No. 13,302.

### STAPLES v. HARTFORD CITY GAS-LIGHT CO.

[Nowhere reported; opinion not now accessible.]